IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-01032-BNB

EDWARD D. ROBBINS,

    Plaintiff,

v.

COUNTY OF BOULDER,
CITY OF BOULDER,
CITY AND COUNTY OF DENVER,
STAN GARNETT,
JOE PELLE,
BRUCE HAAS,
MEGHAN RING,
KAREN FUKUTAKI,
NELISSA MILFIELD,
TYRONE SANDOVAL,
ED TORRES,
JEFFREY GOETZ,
COUNTY/STATE PUBLIC ENTITY #1,
JOHN/JANE DOE#1,
JOHN/JANE DOE#2,
JOHN/JANE DOE#3,
JOHN/JANE DOE#4,
JOHN/JANE DOE#5,
JOHN/JANE DOE#6,
JOHN/JANE DOE#7,
JOHN/JANE DOE#8,
JOHN/JANE DOE#9,

    Defendants.

---

## ORDER OF DISMISSAL

---

    Plaintiff, Edward D. Robbins, was incarcerated at the jail of the Boulder County Sheriff's Office when he initiated this action by filing *pro se* a Prisoner Complaint (ECF No. 1) pursuant to 42 U.S.C. § 1983 for money damages.  Subsequently, he informed

the Court that he has been transferred to the Park County Jail in Fairplay, Colorado. He has paid the $400.00 filing fee.

On April 11, 2014, Magistrate Judge Boyd N. Boland entered an order (ECF No. 14) directing Mr. Robbins to file an amended Prisoner Complaint that complied with the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure, sued the proper parties, asserted the personal participation of each named defendant, and refrained from challenging his state court convictions pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994).

On May 23, 2014, Mr. Robbins filed an amended Prisoner Complaint (ECF No. 11). He asks for money damages and mandamus relief characterized as injunctive relief, i.e., for this Court to order the State of Colorado, which is not a named defendant, to amend statutes governing competency proceedings and adopt procedural safeguards "that protect accused persons from violations to their constitutional rights." ECF No. 11 at 32. He also asks the Court to order the Boulder County Sheriff's Office to discontinue its sealed legal mail policy and offer him a status that does not include eighteen to twenty hours a day of lockdown and allows him the "basic, minimum, civilized measures of life's necessities." ECF No. 11 at 33.

The Court must construe the amended Prisoner Complaint liberally because Mr. Robbins is not represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be an advocate for a *pro se* litigant. *See Hall*, 935 F.2d at 1110. Merely making vague and conclusory allegations that his federal constitutional rights have been violated does not entitle a *pro se* pleader to a day in court, regardless of how liberally

the court construes such pleadings. *See Ketchum v. Cruz*, 775 F. Supp. 1399, 1403 (D. Colo. 1991), *aff'd*, 961 F.2d 916 (10th Cir. 1992). "[I]n analyzing the sufficiency of the plaintiff's complaint, the court need accept as true only the plaintiff's well-pleaded factual contentions, not his conclusory allegations." *Hall*, 935 F.2d at 1110. A court may disregard conclusory allegations, which are not entitled to a presumption of truthfulness. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009); *Meek v. Jordan*, 534 F. App'x 762, 764 (10th Cir. 2013).

Pursuant to 28 U.S.C. § 1915A, the Court must review a Prisoner Complaint when a prisoner is seeking redress from officers or employees of a governmental entity and dismiss the complaint, or any portion of the complaint, that is frivolous. A legally frivolous claim is one in which the plaintiff asserts the violation of a legal interest that clearly does not exist or asserts facts that do not support an arguable claim. *See Neitzke v. Williams*, 490 U.S. 319, 324 (1989).

Mr. Robbins' ability to file a civil action or appeal in federal court *in forma pauperis* pursuant to 28 U.S.C. § 1915 may be barred if he has three or more actions or appeals in any federal court that were dismissed as frivolous, malicious, or for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(g). Under § 1915(g), the Court may count dismissals entered prior to the enactment of this statute. *Green v. Nottingham*, 90 F.3d 415, 420 (10th Cir. 1996). For the reasons stated below, the amended Prisoner Complaint will be dismissed as legally frivolous pursuant to 28 U.S.C. § 1915A.

Mr. Robbins asserts eleven claims with subclaims. Claim five is comprised entirely of subclaims. Most of the asserted claims are vague and conclusory because

Mr. Robbins fails to make supporting factual assertions.

## Claim One

For example, in his first claim, Mr. Robbins makes the vague and conclusory allegation that he was falsely arrested and imprisoned on June 25, 2011, by two unnamed City of Boulder police officers on charges of third-degree assault and violations of protection and bond orders and asserts all charges were dismissed at trial on December 5, 2012. He also makes the vague and conclusory allegation that the police chief of the Boulder Police Department, John/Jane Doe #3, is responsible in a supervisory capacity for "promulgating and maintaining unconstitutional policies" and failing to train Boulder police officers "to obtain adequate probable cause before arresting or imprisoning a person." ECF No. 11 at 10.

Mr. Robbins fails to clarify whether he bases his assertions of false arrest and imprisonment on the contention that the officers lacked probable cause or that the charges against him were dismissed or both. In any event, as Mr. Robbins was informed in the order of April 11, 2014, for an amended Prisoner Complaint, he "must explain what each defendant did to him or her; when the defendant did it; how the defendant's action harmed him or her; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). Simply because the charges against Mr. Robbins were dismissed at trial does not mean the arrest by the two Boulder police officers was false or that he was falsely imprisoned. In addition, as Mr. Robbins also was informed in the April 11 order, he may not hold the Boulder police chief, John/Jane Doe #3, liable for the unconstitutional conduct of his or her subordinates on a theory of respondeat

4

superior. *See Ashcroft*, 556 U.S. at 676. To sue the unnamed Boulder police chief under § 1983 for conduct "arising from his or her superintendent responsibilities," Mr. Robbins must plausibly plead and eventually prove not only that the official's subordinates violated the Constitution, but that the official by virtue of his own conduct and state of mind did so as well. *See Dodds v. Richardson*, 614 F.3d 1185, 1198 (10th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 677). Mr. Robbins has failed to do so. Claim one will be dismissed as legally frivolous pursuant to § 1915A(b)(1).

## Claim Two

In claim two, Mr. Robbins alleges he was falsely arrested and imprisoned and subjected to excessive force by an unnamed Denver police officer, identified as John/Jane Doe #4, in another arrest on charges of third-degree assault, disturbing the peace, and threats to persons or property occurring on September 16, 2011. He further alleges he declined to answer the officer's questions, was put in restraints, placed in a police car, and taken to a police station for one to two hours before being taken to the Denver jail. He fails to allege the disposition of the charges or argue any facts that indicate he was falsely arrested and imprisoned. He complains that, while at the police substation, he was handcuffed on one arm for an hour, anchored to a cement bench in a cell room with a sink and toilet, and in order to use the toilet he had to lean off the bench to one side. Finally, he makes the vague and conclusory allegation that the police chief of the Denver Police Department, John/Jane Doe #5, is responsible in a supervisory capacity for "promulgating and maintaining unconstitutional policies," causing his "wrongful arrest and imprisonment and injury by excessive force," ECF No. 11 at 12, and for failing to train Denver police officers "to find adequate probable cause

5

before arresting or imprisoning a person." *Id.*

Mr. Robbins fails to explain how the defendants' actions harmed him. *See Nasious*, 492 F.3d at 1163. Simply because he was arrested, placed in restraints, temporarily held at a police station, left in a cell room for one hour handcuffed to a cement bench with awkward access to a toilet, and booked on criminal charges does not mean the arrest by the two Boulder police officers was false, his imprisonment was false, or he was subjected to force, excessive or otherwise.

Although Mr. Robbins claims he experienced "injury by excessive force," ECF No. 11 at 12, there are no well-pled facts that demonstrate which, if any, incident Mr. Robbins thinks caused the alleged excessive force or the manner in which Mr. Jones was handcuffed, other than to point out his access to a toilet in the Denver jail required him to lean to one side off the bench to which he was handcuffed, or any actual injury that Plaintiff attributes to being handcuffed. In short, Mr. Robbins fails to allege sufficient, or any, facts to state a plausible claim of an excessive force violation. Without supporting facts, Mr. Robbins' excessive force claim rests on nothing more than conclusory allegations. *Ashcroft*, 556 U.S. at 681.

In addition, as Mr. Robbins also was informed in the April 11 order for an amended Prisoner Complaint, he may not hold the Denver police chief, John/Jane Doe #5, liable for the unconstitutional conduct of his or her subordinates on a theory of respondeat superior. *See id.*, 556 U.S. at 676. To sue the unnamed Denver police chief under § 1983 for conduct "arising from his or her superintendent responsibilities," Mr. Robbins must plausibly plead and eventually prove not only that the official's subordinates violated the Constitution, but that the official by virtue of his own conduct

and state of mind did so as well.  See *Dodds*, 614 F.3d at 1198 (quoting *Iqbal*, 556 U.S. at 677).  Mr. Robbins has failed to do so.  Claim two will be dismissed as legally frivolous pursuant to § 1915A(b)(1).

## Claim Three

In claim three, Mr. Robbins alleges he was falsely arrested and imprisoned on July 26, 2012, while incarcerated at the jail of the Boulder County Sheriff's Office and charged with third-degree assault of a co-inmate.  He was placed in disciplinary segregation pending a disciplinary hearing and on December 19, 2012, following a jury trial, was acquitted of the charge.  Mr. Robbins complains he was involuntarily committed to the Boulder jail pending a competency hearing on other charges filed in June or July 2011.  He also makes the vague and conclusory allegation that the Boulder County sheriff, Joe Pelle, is responsible in a supervisory capacity for "promulgating and maintaining unconstitutional policies" and failing to train deputies at the Boulder jail "to find adequate probable cause before arresting or imprisoning a person." ECF No. 11 at 14.

As in claim one, Mr. Robbins fails to clarify whether he bases his assertions of false arrest and imprisonment on the contention that any Boulder deputy lacked probable cause or that the charges against him were dismissed or both.  As Mr. Robbins was informed in the April 11 order for an amended Prisoner Complaint, he "must explain what each defendant did to him or her; when the defendant did it; how the defendant's action harmed him or her; and, what specific legal right the plaintiff believes the defendant violated." *Nasious*, 492 F.3d at 1163.  Simply because the charges against Mr. Robbins were dismissed at trial does not mean his arrest was false or that

7

he was falsely imprisoned, particularly since the incident occurred in prison. In addition, as Mr. Robbins also was informed in the April 11 order, he may not hold the Boulder County sheriff, Joe Pelle, liable for the unconstitutional conduct of his or her subordinates on a theory of respondeat superior. *See Ashcroft*, 556 U.S. at 676. To sue the unnamed Boulder County sheriff under § 1983 for conduct "arising from his or her superintendent responsibilities," Mr. Robbins must plausibly plead and eventually prove not only that the official's subordinates violated the Constitution, but that the official by virtue of his own conduct and state of mind did so as well. *See Dodds v. Richardson*, 614 F.3d 1185, 1198 (10th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 677). Mr. Robbins has failed to do so. Claim three will be dismissed as legally frivolous pursuant to § 1915A(b)(1).

### Claim Four

In claim four, Mr. Robbins makes the vague and conclusory allegation that Meghan Ring, Tyrone Sandoval, and Nelissa Milfield, Boulder public defenders, conspired against him with a private psychiatrist, Karen Fukutaki, whom they arranged to evaluate him on May 5, 2012, and subjected him to malicious abuse of process by initiating false competency proceedings against him in 2011 and 2012 and by referring him for involuntary commitment because he would not accept plea bargains. He alleges that at a competency hearing on August 14, 2012, the trial court ruled he was competent and could proceed to trial, which was held on December 4-5, 2012, and at which he was represented by private counsel at state expense.

Mr. Robbins may not sue his public defenders. Defense attorneys, whether court-appointed or privately retained, performing in the traditional role of attorney for the

defendant in a criminal proceeding are not deemed to act under color of state law; such attorneys represent their client only, not the state, and cannot be sued in a § 1983 action. *See Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Hunt v. Bennett*, 17 F.3d 1263, 1268 (10th Cir. 1994). He also may not sue the psychiatrist who evaluated him in 2012 as "incompetent to proceed" and provided an "indistinct mental health diagnosis." ECF No. 11 at 16. The psychiatrist evaluated Mr. Robbins and offered her opinion regarding his competence to stand trial, which apparently was forwarded to the trial court. Witnesses such as the psychiatrist are absolutely immune for liability in damages for such testimony. *Briscoe v. LaHue*, 460 U.S. 325, 329-30 (1983); *see also Bloom v. Social Security Admin.*, 72 F. App'x 733, 735 n.2 (10th Cir. 2003).

Moreover, Mr. Robbins' conspiracy claim fails as vague and conclusory. "To establish a *prima facie* claim of conspiracy under § 1983, the Plaintiff must make a factual showing for each of the following elements: (1) a shared conspiratorial objective (the agreement to deprive the Plaintiff of a constitutional or statutory right); concerted action by the Defendants; and (3) an actual deprivation of rights." *Chamberlain v. Dunker*, No. 13-cv-03037-CMA-MJW, 2014 WL 3373554, at *2 (D. Colo. July 9, 2014) (citations omitted). "Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim." *Id.* (citing *Durre v. Dempsey*, 869 F.2d 543, 545 (10th Cir. 1989)). Finally, malicious abuse of process is a common-law state tort, *see Buck v. City of Alburquerque*, 549 F.3d 1269, 1274 (10th Cir. 2008), *see also Martínez v. Winner*, 771 F2d 424, 432 (1985), not a federal constitutional claim. Claim four will be dismissed as legally frivolous pursuant to § 1915A(b)(1).

<u>Claim Five</u>

Mr. Robbin's fifth claim is a litany of complaints asserted under the heading "Punishment of a Pretrial Detainee and Cruel and Unusual Punishment," ECF No. 11 at 18, each of which is vague and conclusory and nearly all of which consistently fail to identify against whom the allegations are asserted.

"Although the Due Process Clause governs a pretrial detainee's claim of unconstitutional conditions of confinement, the Eighth Amendment standard provides the benchmark for such claims." *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998) (citation omitted). Thus, Plaintiff must demonstrate that the conditions he is challenging are both sufficiently serious as an objective matter and that the jail officials acted with a sufficiently culpable state of mind. *See id.* "[I]n determining whether a pretrial detainee has sufficiently satisfied the Eighth Amendment standard, it is particularly important to develop an adequate record on factual disputes related to the seriousness and length of the alleged deprivations, for these are the essential elements of a conditions of confinement claim." *Id.* However, "[t]here is no bright line." *Allen v. Avance*, 491 F. App'x 1, 4 (10th Cir. 2012). In *Allen*, the objective component was satisfied by allegations that the pretrial detainee was placed in a holding cell for two periods of time, one of seven days and the other four days, during which the cell had standing water on the floor for part of the time and he was deprived of bedding materials, access to towels and basic toiletries, legal papers, personal property, access to the commissary, and visitation. *See id.* Mr. Robbins' conclusory allegations fails to satisfy either the objective or subjective components.

Mr. Robbins first conclusory allegations is that Boulder County sheriff, Joe Pelle, and Jail Division chief, Bruce Haas, "promulgated and maintained unconstitutional

10

policies that caused violations to [his] Fourteenth and Eighth Amendment rights in 2001, 2012, 2013 and 2014" and failed to "train and supervise Boulder County Sheriff's Office deputies and administrative personell [sic] in their duties" to watch over the physical health of inmates and prevent inmate assaults.  ECF No. 11 at 18.

He alleges that commanders at the Boulder County Sheriff's Office, Ed Torres and Jeffrey Goetz, violated his Fourteenth Amendment rights when they gave him harsh disciplinary sanctions in April 2011 and May through September 2012, but fails to provide any facts whatsoever in support of this contention.

He claims he has physical injuries resulting from customs and policies at the Boulder jail in three different incidents for which he fails to provide any factual details or name any defendants: "1) BCSO Jail incident #12-2841, 2) an ongoing medical condition between October 2012 through April 2013 and 3) BCSO incident #13-895." ECF No. 11 at 18.  He also "calls attention to prolonged anguish and distress under customs and policies at the BCSO Jail that were far more agonizing and injurious than any of his physical injuries to date." ECF No. 11 at 19.

He argues without any supporting facts asserted against any defendant that before he stood trial, either in 2011 or 2012, he was subjected to the "harsh and dangerous, average conditions at the BCSO Jail that involve long stretches of lockdown each day and he was treated unfairly under the jail administrative and disciplinary policies."  ECF N. 121 at 19.

He alleges that, as a result of an alleged "fighting incident on April 7, 2011 (BCSO Jail incident #12-2841)," he was sentenced to twenty days of disciplinary segregation, although he contends there was "evidence to the contrary, the alleged

11

victim was deemed 'non-combative' and was not sanctioned nor [sic] incurred any loss of status or privileges." ECF No. 11 at 19.  He provides no supporting factual allegations to attack the disciplinary conviction, and fails to name anyone against whom this claim is asserted.

He generally asserts that in March and April of 2012, he spent "long stretches of time over days and weeks" in a state of "highly punitive isolation" in a tier of the Boulder jail where inmates were housed alone, "as a lack of crowding permitted, under an unofficial, but highly punitive form of segregation and isolation." ECF No. 11 at 19. Again, he fails to provide supporting factual allegations or identify against whom this claim is asserted.

He maintains that on May 2, 2012, he was moved to the intake module because of an alleged fighting incident in the medium module and, accordingly to Boulder Sheriff's Office commander, Ed Torres, was to stay there pending classification review. He complains that during his unspecified period of time in the intake module he did not get any "recreation or exercise opportunities, and endured prolonged idleness, exercise deprivation and general degradation under the oppressive, unintegrated and changeless routine for weeks upon months." ECF No. 11 at 19.  Although he mentions Ed Torres, Plaintiff fails to make clear against whom these vague allegations are asserted, or assert facts that demonstrate the conditions he challenges are both sufficiently serious as an objective matter and that the jail officials acted with a sufficiently culpable state of mind.  *Craig*, 164 F.3d at 495.

He contends he received disciplinary sanctions three times between May 1 and November 1, 2012, spent three months "under the highly oppressive conditions at

Intake," ECF No. 11 at 20, and three months serving disciplinary sentences in "the disciplinary pod." *Id.* He contends he received the disciplinary sentences from commander, Jeffrey Goetz, and none of the other persons involved any of the alleged incidents was found at fault. He also alleges that some privileges he lost while in administrative segregation were restored when he was moved from the disciplinary pod to the "Intake 'sub-day' room," *id.*, in the last week of October. Although Plaintiff may be suing Jeffrey Goetz, he fails to provide sufficient supporting factual allegations, including but not limited to whether he lost good-time credits as a result of the disciplinary convictions. He also fails to assert the number of days he spent in intake and in the disciplinary pod for each disciplinary sentence; he only cites to the six-week disciplinary sentence he apparently spent in administrative segregation stemming from the incident that occurred on September 11, 2012. As such, he fails to assert facts demonstrating that the conditions he challenges are both sufficiently serious as an objective matter and that the jail officials acted with a sufficiently culpable state of mind. *Craig*, 164 F.3d at 495.

He asserts that by November 2012, he developed a medical condition and lost weight, dropping from 205 pounds to 165 in ten months. He alleges he filed grievances in January 2013, received medical attention for his symptoms, and on February 7, 2013, his condition was diagnosed as a syndrome he identifies as GERD, apparently Gastroesophageal Reflux Disease. He complains that for three days around March 5, 2013, while he still was suffering from GERD, Boulder jail inmates, including himself, received sack lunches during a kitchen maintenance upgrade. He alleges he grieved the quality of the meals and complained he was not getting enough to eat or adequate

nutrition, but was denied extra food and told his concerns were "'non-grievable.'" ECF No. 11 at 21.  It is unclear to the Court whether Mr. Robbins is asserting a claim or simply recounting events.  In any event, he fails to make clear against whom these allegations are asserted.

He alleges that on March 28, 2012, his hand was smashed in a door while he was serving a disciplinary sentence when another inmate, who had been throwing cups of urine at Plaintiff, kicked the doorpost.  He complains that his request for documentation of his injuries was denied.  Mr. Robbins fails to allege against whom these allegations are asserted.

He complains that the grievances he filed attacking the conditions of his confinement, including being held in isolation, were denied as "'non-grievable.'" ECF No. 11 at 21-22.  He also complains that, since April of 2013, although some of his privileges have been restored, "a capricious violation of equal protection standards for incarcerated persons has persisted against him at the BCSO Jail."  ECF No. 11 at 22. He further complains about the legal mail policy at the Boulder jail, which he contends he has challenged in grievances denied as "'non-grievable.'"  *Id.*  He fails to support these vague allegations with any factual assertions, or identify against whom these allegations are asserted.  Claim five and its numerous subparts will be dismissed as legally frivolous pursuant to § 1915A(b)(1).

Claim Six

He titles his sixth claim "Innefective [sic] Assistance of Counsel and Access to Court," ECF No. 11 at 23, and makes the vague and conclusory allegation that in 2011 and 2012, the managing supervisor of the Boulder County Public Defender's Office,

John/Jane Doe #7, violated his rights by "promulgating and maintaining unconstitutional polices" at the Boulder public defender's office by failing to sanction or discharge public defenders who pursued "unsupportable competency proceedings against accused persons." *Id.* He also complains without well-pled facts that his ability to access the court was impeded because his proceedings were suspended while public defenders raised the issue of competency in retaliation against him because he refused to accept plea bargains n his cases.

To the extent Mr. Robbins may be suing his state public defenders, he may not do so, as he was informed in the discussion of claim four above. Defense attorneys, whether court-appointed or privately retained, performing in the traditional role of attorney for the defendant in a criminal proceeding are not deemed to act under color of state law; such attorneys represent their client only, not the state, and cannot be sued in a § 1983 action. *See Polk County*, 454 U.S. at 325; *Hunt*, 17 F.3d at 1268. In any event, the Court need not address Mr. Robbins' vague and conclusory allegations. *Ashcroft*, 556 U.S. at 681. Claim six will be dismissed as legally frivolous pursuant to § 1915A(b)(1).

## Claim Seven

In claim seven, titled "Access to Courts," Mr. Robbins makes the vague and conclusory allegation that the "Director of County/State Public Agency/Department #1," ECF No. 11 at 24, who is not named as a defendant, and John/Jane Doe #8 violated his Fourteenth Amendment rights "by promulgating and maintaining unconstitutional policies at the County/State Public Entity #2. He complains – without providing any factual support – about the court-ordered competency evaluations he received, which

he describes as "negligent," "unprofessional," "poorly documented," and deficient with "bold, unsupportable conclusions."  ECF No. 11 at 24.  Again, the Court need not address Mr. Robbins' vague and conclusory allegations.  *Ashcroft*, 556 U.S. at 681.  Claim seven will be dismissed as legally frivolous pursuant to § 1915A(b)(1).

### Claims Eight and Nine

Mr. Robbins asserts two claims of malicious prosecution, one in Boulder County against Boulder district attorney, Stan Garnett (claim eight), and one in Denver County against Denver district attorney, John/Jane Doe #9 (claim nine), for prosecuting him on criminal charges dismissed at trial.

Mr. Robbins may not sue Stan Garnett or John/Jane Doe #9.  State prosecutors are entitled to absolute immunity in § 1983 suits for activities within the scope of their prosecutorial duties.  *See Imbler v. Pachtman*, 424 U.S. 409, 420-24 (1976); *see also Butz v. Economou*, 438 U.S. 478, 504 (1978).  Initiating and pursuing a criminal prosecution are acts are "'intimately associated with the judicial process'" *Snell v. Tunnell*, 920 F.2d 673, 686 (10th Cir. 1990) (quoting *Imbler*, 424 U.S. at 430).  Stan Garnett and John/Jane Doe #9 are immune from liability for Mr. Robbins' claims that they initiated baseless prosecutions against him simply because he was acquitted of the charges.  Claims eight and nine will be dismissed as legally frivolous pursuant to § 1915A(b)(1).

### Claims Ten and Eleven

In claim ten, Mr. Robbins is suing his defense counsel, Meghan Ring, for professional malpractice stemming from her representation of him at him competency and criminal proceedings.  In claim eleven, he is suing Karen Fukutaki, a psychiatrist,

for professional malpractice stemming from her competency evaluation of him. As Mr. Robbins was informed in the discussion of claims four and six above, he may not sue his public defenders in a § 1983 action. *See Polk County*, 454 U.S. at 325; *Hunt*, 17 F.3d at 1268. As he was informed in claim four, he also may not sue the psychiatrist who evaluated him for his competence to stand trial. *Briscoe*, 460 U.S. at 329-30; *see also Bloom*, 72 F. App'x at 735 n.2. Claims ten and eleven will be dismissed as legally frivolous pursuant to § 1915A(b)(1).

The Court makes two general observations. Mr. Robbins' vague and conclusory allegations against the cities and counties of Boulder and Denver fail. As Mr. Robbins was informed in the order of April 11, 2014 (ECF No. 4) for an amended Prisoner Complaint, municipalities and municipal entities are not liable under § 1983 solely because their employees inflict injury on a plaintiff. *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 694 (1978); *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782 (10th Cir. 1993). To establish liability, a plaintiff must show that a policy or custom exists and that there is a direct causal link between the policy or custom and the injury alleged. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989). Plaintiff cannot state a claim for relief against the cities and counties of Boulder and Denver under § 1983 merely by pointing to isolated incidents. *See Monell*, 436 U.S. at 694. Vague and conclusory allegations are insufficient to establish "a direct causal link between the municipal action and the deprivation of federal rights." *Board of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 404 (1997).

Mr. Robbins also fails to assert in the majority of his claims the personal participation of each defendant. As he was told in the April 11 order for an amended

Prisoner Complaint, personal participation is an essential allegation in a civil rights action. *See Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976). To establish personal participation, Mr. Robbins must show that each defendant caused the deprivation of a federal right. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). There must be an affirmative link between the alleged constitutional violation and each defendant's participation, control or direction, or failure to supervise. *See Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993). With respect to supervisory officials, a defendant may not be held liable for the unconstitutional conduct of his or her subordinates on a theory of respondeat superior. *See Ashcroft*, 556 U.S. at 676 (2009). Furthermore,

> when a plaintiff sues an official under *Bivens* [*v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971),] or § 1983 for conduct "arising from his or her superintendent responsibilities," the plaintiff must plausibly plead and eventually prove not only that the official's subordinates violated the Constitution, but that the official by virtue of his own conduct and state of mind did so as well.

*See Dodds v. Richardson*, 614 F.3d 1185, 1198 (10th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 677). Therefore, in order to succeed in a § 1983 suit against a government official for conduct that arises out of his or her supervisory responsibilities, a plaintiff must allege and demonstrate that: "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Id*. at 1199. Mr. Robbins repeatedly has failed to do so, making instead vague and conclusory allegations

invoking talismanic language about how certain defendants "promulgated" or "implemented" policy without providing any supporting factual substance. The amended Prisoner Complaint will be dismissed as legally frivolous pursuant to § 1915A(b)(1).

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis status* will be be denied for the purpose of appeal. *See Coppedge v. United States*, 369 U.S. 438 (1962). If Plaintiff files a notice of appeal he also must pay the full $505.00 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.

Accordingly, it is

ORDERED that the amended Prisoner Complaint (ECF No. 11) and the action are dismissed as legally frivolous pursuant to 28 U.S.C. § 1915A(b)(1). It is

FURTHER ORDERED that leave to proceed *in forma pauperis* on appeal is denied. It is

FURTHER ORDERED that any pending motions are denied as moot.

DATED August 12, 2014, at Denver, Colorado.

> BY THE COURT:
>
>  s/Lewis T. Babcock
> LEWIS T. BABCOCK, Senior Judge
> United States District Court